152 N.J. Super. 179 (1977)
377 A.2d 909
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALFRED A. PORRO, JR., AND THOMAS JONES, DEFENDANTS, RICHARD TECOTT, PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 24, 1977.
Decided August 1, 1977.
*181 Before Judges HALPERN, ALLCORN and BOTTER.
Messrs. Zarin and Maran, attorneys for appellant (Mr. Joseph Maran, Jr., of counsel; Mr. Stephen B. Rockoff on the brief).
*182 Mr. Joseph C. Woodcock, Jr., Bergen County Prosecutor, attorney for respondent (Mr. James Mayer, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
Appellant contends that the grand jury exceeded its power in naming him as an unindicted coconspirator and that he has been denied due process of law because, not having been indicted, no method is available for him to establish his innocence and restore his good name, reputation and business standing. The issues raised on this appeal are novel in this state and to our knowledge have been decided previously in only one reported case. United States v. Briggs, 514 F.2d 794 (5 Cir.1975); see Note, 22 Wayne L. Rev. 1243, 1245 (1976); Note, 7 Seton Hall L. Rev. 484 (1976); 7 Toledo L. Rev. 245 (1975).
The indictment (S-1320-75) was in three counts. The first count named Alfred A. Porro, Jr. and Thomas Jones as defendants and Fred Rosenberg, Timothy Sullivan, Walter Schultz and appellant Richard Tecott as "co-conspirators but not as defendants * * *." The first count charged a conspiracy between October 1, 1967 and October 31, 1971, in which the indicted and unindicted conspirators allegedly conspired and agreed to permit Tecott, Jackson & Co. (hereafter, Tecott-Jackson), Timothy Sullivan, Gibraltar Securities Co. (Gibraltar) and Municiplex, Inc. to participate in the underwriting of bond issues for the East Rutherford Sewerage Authority and to pay sums of money to certain conspirators who were public officers as fees and rewards, contrary to N.J.S.A. 2A:105-1.[1]
The indictment charged that Alfred A. Porro, Jr. was attorney for the East Rutherford Sewerage Authority (the *183 Authority) from June 1968 onward; that Thomas Jones was Mayor of the Borough of East Rutherford in 1968 and 1969, and that Fred Rosenberg was clerk to the Authority between February 1969 and December 31, 1971. Count 1 also charged that Porro, Jones and Rosenberg engaged in misconduct in office during the period of the conspiracy by failing to serve the public with the highest fidelity and integrity and by using the power and influence of their public offices to obtain monies from Tecott-Jackson, Gibraltar and Municiplex, Inc. who had sought the Authority's approval for participating in underwriting the Authority's bond issues.
In the overt acts section of count 1 the indictment charged that Porro and Rosenberg formed Municiplex, Inc. in October 1967 and that thereafter Porro, Jones and Rosenberg met to discuss the formation of the East Rutherford Sewerage Authority and agreed that Municiplex, Inc. would be appointed financial advisor to the Authority and that Jones would receive a sum of money from Municiplex, Inc. out of the profits realized from the Authority's first bond issue.
Additional overt acts alleged were that in September 1968 Municiplex, Inc. and Tecott-Jackson entered into a contract, unknown to the Authority, whereby Municiplex, Inc. and Tecott-Jackson would "evenly divide the profits" realized on the underwriting of the Authority's first bond issue. Further acts alleged were that Rosenberg paid Jones a sum of money in early 1969, that in April 1970 Municiplex, Inc. and Gibraltar entered into an agreement to divide the profits realized from the underwriting of the Authority's second bond issue, and that in July 1971, Timothy Sullivan, president of Gibraltar, paid to Walter Schultz approximately $20,000 in cash which was distributed by Schultz by depositing approximately $2,000 to the account of Fred Rosenberg and by delivering the balance to Porro's law office.[2]
*184 By motion returnable in May 1976, on notice to the Bergen County Prosecutor and to the attorneys representing Jones and Porro, Tecott moved to expunge his name from the indictment. Tecott asserts that he was a general partner in Tecott-Jackson of Newark, New Jersey, and that he was responsible for municipal bond trading and underwriting. He asserts that in September 1968 Tecott-Jackson entered into an agreement with Municiplex, Inc. to underwrite a tax-exempt revenue bond issue for the Authority and that the bonds were purchased and sold in 1969. He asserts that when the Bergen County Prosecutor's office began its investigation of these matters he cooperated fully and testified voluntarily before the grand jury. He asserts, further, that the publicity given to this indictment which named him as an unindicted coconspirator has been damaging to his business reputation, and that because he was not indicted he has no way of defending against the allegations contained in the indictment.
With respect to indictable offenses, N.J. Const. (1947) Art. I, par. 8, provides generally that no person shall be held to answer for a criminal offense, "unless on the presentment or indictment of a grand jury * * *." The ancient function of the grand jury in the Anglo-American system of justice has been to sift accusations of criminal conduct, to advance the public interest by the discovery and indictment of persons chargeable with certain crimes and to protect individuals against arbitrary, oppressive and unwarranted criminal accusations. United States v. Calandra, 414 U.S. 338, 342-343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568 (1974). The principal function of the grand jury *185 is to indict or not indict. It should indict when a prima facie showing has been made that the accused has committed a crime. See Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 487-488 (1971). In an earlier time the grand jury returned a presentment which called criminality to the attention of proper authorities and authorized or requested the preparation of an indictment. This served as an accusation upon which the prosecutor was expected to act. In re Presentment by Camden Cty. Grand Jury, 34 N.J. 378, 388 (1961), hereafter referred to as Camden County Presentment (II).
In addition, grand juries engaged in the practice of making a "report" or "presentment" on the state of public affairs or conditions of a particular area or on matters of general governmental interest with comments and criticism of those affairs. Id. This remains the second function of our grand jury.
In recent times presentments which censure a public official have come under attack because, falling short of indicting the official, they deny him the opportunity to face his accusers and to refute their accusations. Because censure of a named public official may damage his reputation, without any reasonable opportunity to defend himself, our Supreme Court has developed rules requiring examination of the presentment and the evidence supporting it to determine whether or not public disclosure is warranted. R. 3:6-9(c). This rule provides in part that the assignment judge shall examine the presentment to determine if a crime has been committed for which an indictment should have been returned. If the record discloses that a crime has been committed the presentment should be referred back to the grand jury with appropriate instructions. The rule further provides: "If a public official is censured the proof must be conclusive that the existence of the condemned matter is inextricably related to non-criminal failure to discharge his public duty." The judge may strike portions of the presentment which seem false, improperly motivated or which lack *186 adequate support in the minutes and records of the grand jury. A censured public official has the right to a hearing in camera, including the right to examine the grand jury minutes fully and the right to introduce additional evidence to expose any deficiency. Id.; see In re Presentment of Essex Cty. Grand Jury, 46 N.J. 467, 474 (1966).
Thus, a grand jury should indict or return a "no bill" according to the evidence. R. 3:6-8. Where a presentment is returned concerning public affairs, special precaution must be taken to protect against censure, embarrassment or disgrace of public officials unless the evidence of official impropriety is conclusive and yet falls short of the commission of an indictable offense. R. 3:6-9(c); Camden County Presentment (II), supra, 34 N.J. at 391.
Thus far the courts of this State have not been asked to afford special protection to those individuals, often termed "unindicted coconspirators," who are named in indictments without being made defendants. Doubtless many were relieved to find that they had not been named defendants in the case. Yet, the potential for harm is great, just as in the case of individuals who are named in a presentment and have been censured or criticized. The individual has no right to give his defense to the grand jury, to be represented by counsel in doing so, or ultimately to put the burden upon the State of proving the accusation before a petit jury. Despite the obvious potential for injury, naming unindicted coconspirators has been a common practice and may be explained historically.
Under our law a conspiracy consists of an agreement or combination between two or more persons to commit a crime, provided an overt act is committed by one or more parties to the agreement in furtherance of the object of the conspiracy. N.J.S.A. 2A:98-1; N.J.S.A. 2A: 98-2; State v. Carbone, 10 N.J. 329, 338 (1952). The function of an indictment is to serve as a pleading which specifies the particular crime charged so that defendant will have notice thereof and an opportunity to prepare his defense. *187 Upon completion of the trial the indictment and judgment of conviction or acquittal serve as the record of disposition of particular charges, allowing the defense of double jeopardy to be asserted in an appropriate case. See United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588, 593 (1876); United States v. Briggs, supra, 514 F.2d at 800. Clarity and certainty in the indictment are essential to apprise the accused of the crime with which he is charged. Ledbetter v. United States, 170 U.S. 606, 610, 18 S.Ct. 774, 775, 42 L.Ed. 1162, 1163 (1898); State v. La Fera, 35 N.J. 75 (1961). Accordingly, it has been held that a defendant cannot be convicted of conspiring with persons who were known to the grand jury unless those persons were named in the indictment as coconspirators. State v. Faure, 98 N.J.L. 18, 21 (Sup. Ct. 1922). See also, State v. Smith, 89 N.J.L. 52 (Sup. Ct. 1916), which held that defendant could not be convicted of making illegal sales of liquor to persons known to the grand jury when those persons were not named in the indictment as persons to whom the sales were made.
Apparently, then, the practice arose to name all persons who participated in the conspiracy if those persons were known to the grand jury, whether or not all such persons were indicted. This was considered essential to meet a defendant's needs in preparing his defense and in satisfying the other purposes of the indictment. However, the incidental injury to a named unindicted coconspirator who had no way of defending himself was ignored.
Tecott now asserts that his rights have been abused and that this practice should be condemned as beyond the authority of a grand jury. Tecott also asserts that his due process rights have been violated, namely, that his reputation and business dealings have been impaired without affording him any legal means of exoneration or redress. United States v. Briggs, supra, 514 F.2d at 806, supports both contentions.
Often a balance must be struck between conflicting interests, and incidental harm to others may be the by-product *188 of the State's legitimate prosecution of a criminally accused and the protection afforded by the criminal justice system to that accused. The question here is whether the rights of the State, the accused and the unindicted coconspirator may be brought into harmony.
The State may have an interest in naming but not indicting a coconspirator. He may be a willing witness or one who will be given immunity from prosecution in order to obtain his testimony. The acts and declarations of a conspirator in furtherance of the conspiracy are binding on all parties to the conspiracy. State v. Carbone, supra, 10 N.J. at 339.[3] Moreover, the prosecution of a conspirator may be barred by law, for example by the statute of limitations, by reason of his unequivocal withdrawal from the conspiracy or for some other reason, although other conspirators may remain subject to prosecution.
As noted above, a defendant has the right to know the specific nature of the crime with which he has been charged by the grand jury. This includes the names of coconspirators, if known to the grand jury. To some extent our modern discovery rules in criminal cases will serve this purpose. R. 3:7-5 specifically provides that a court may order a bill of particulars to be furnished to a defendant if the indictment or accusation is not sufficiently specific to enable the defendant to prepare his defense. "The application shall point out clearly the particulars sought by the defense." Also, R. 3:13-3(a) provides that upon request of a defendant the prosecuting attorney shall make available to the defendant certain relevant books, documents and statements, the grand jury testimony, the results and reports of physical and mental examinations, the names and addresses of all persons known to the prosecuting attorney who have *189 relevant evidence or information, including which persons may be called as witnesses, and records of statements, signed or unsigned, by such persons or codefendants which are within the possession, custody or control of the prosecuting attorney. But, as noted in Briggs, supra:
* * * The bill of particulars is, however, the statement of the prosecutor and does not carry the imprimatur of credibility that official grand jury action does. [514 F.2d at 805]
Finally, we consider the needs and potential injury to the named but unindicted coconspirator who may not wish to be a mere bystander to the State's pursuit of its quarry. Although speaking of the effects upon public officials who are debased by a presentment, the words of our late Chief Justice Weintraub in his concurring opinion in Camden County Presentment (II), supra, are equally pertinent here:
* * * But when a process thus designed to protect the individual against an unfounded charge is converted into a final trial and results in the condemnation of an individual, the basic purpose of a grand jury is subverted and indeed by a procedure wholly unsuitable as a vehicle for that final decision. It does not matter that the individual is not jailed or fined on the basis of the report; public censure by an agency of the judiciary is punitive in any practical sense of the word. [34 N.J. at 403; emphasis supplied]
The conclusion we reach is that these competing interests should be harmonized if possible. We agree with the philosophy of Briggs that the harm done to the named but unindicted coconspirator should be avoided. (We note but do not fully subscribe to the view expressed in Briggs that no justification has been demonstrated for naming in an indictment an unindicted coconspirator. 514 F.2d at 806.) And because we believe reconciliation of these competing interests is attainable, we need not decide whether Tecott's rights are supported by federal due process standards (compare Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), with Wisconsin v. Constantineau, 400 U.S. 433, 91 *190 S.Ct. 507, 27 L.Ed.2d 515 (1971)) or New Jersey's own constitutional due process requirements. See N.J. Const. (1947), Art. I, par. 1; Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 552-553 (1949).
In our view, if a grand jury determines that a known individual was a coconspirator but decides not to indict him or her, the individual shall not be named in the indictment as an unindicted coconspirator. However, in such a case the grand jury minutes should reflect that the grand jury has determined that the individual was a coconspirator but decided, for reasons which need not be stated, not to indict him or her. The indictment may charge defendant with conspiring with any codefendant and/or with other persons known and/or unknown, as the case may be.
With this in mind we turn, finally, to the specific relief sought in the trial court. Tecott moved to expunge his name from the indictment. The prosecutor stated that he would consent to the expungement. However, claiming that Tecott was involved, the prosecutor asked to substitute for Tecott's name a phrase that would indicate that another person was a coconspirator in addition to the defendants and the other named unindicted coconspirators. The trial judge was willing to grant Tecott's motion to expunge his name provided that appropriate language be substituted as requested by the prosecutor. Tecott objected, insisting that his motion be granted expunging his name from the indictment, without more. The trial judge denied this motion.
We agree with the position taken by the prosecutor and the trial judge. Although an unindicted coconspirator should not be named in the indictment, the indictment should contain appropriate language to indicate that one or more other persons are involved, known or unknown, as the case may be. Therefore, to reach this result we are compelled to reverse and set aside the order denying the deletion of Tecott's name. But we will order, instead, the relief offered by the trial judge.
Accordingly, we order that Richard Tecott's name as an unindicted coconspirator be expunged from the first count *191 of the indictment and that an appropriate phrase be inserted to indicate participation of an additional known but unnamed, unindicted coconspirator.[4] The case is remanded to the trial court for the entry of an appropriate order making the necessary amendment to the indictment. See State v. La Fera, supra, 35 N.J. at 93.
NOTES
[1] N.J.S.A. 2A:105-1 provides:

Any judge, magistrate or public officer who, by color of his office, receives or takes any fee or reward not allowed by law for performing his duties, is guilty of a misdemeanor.
[2] The second count of the indictment charged that Porro was guilty of misconduct in office, as attorney for the Authority, by using his influence to obtain money from Municiplex, Inc., Tecott-Jackson and Gibraltar for their participation in the underwriting of bond issues for the Authority, contrary to N.J.S.A. 2A:85-1. The third count of the indictment charged that Porro, between April 1, 1970 and October 31, 1971, while attorney for the Authority, corruptly received from Municiplex, Inc., Sullivan and Gibraltar, sums of money for performing his duties as a public officer contrary to N.J.S.A. 2A:105-1.
[3] We do not imply that a conspirator must be named in the indictment for his conduct or speech to be admissible against others. See United States v. Briggs, supra, 514 F.2d at 805, text accompanying n. 17.
[4] No relief is ordered as to the other three persons named as unindicted coconspirators because they have not sought any relief and we intend this opinion to apply prospectively only. Cf. Willis v. Dept. of Conservation & Economic Development, 55 N.J. 534, 541 (1970). In any event, where no harm can be done by naming an unindicted coconspirator, as in the case where he has already pled guilty to or been convicted of an offense growing out of the conspiracy, it is not necessary to apply the rule enunciated in this opinion.