Daniel Roy BUCKWALTER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7303.

Court of Appeals of Alaska.

May 11, 2001.

Chet Randall, Assistant Public Advocate, and Brant K. McGee, Public Advocate, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

A jury convicted Daniel Roy Buckwalter of first-degree theft [1] and scheme to defraud [2] for stealing more than $25,000 in goods from businesses in Anchorage, Eagle River, and Wasilla during a ten-month period in 1997 and pawning the goods for cash. Buckwalter argues that the superior court should have dismissed his indictment. He also claims that the trial jury was improperly instructed. We find no abuse of discretion or, at worst, harmless error in those trial court rulings. We also reject Buckwalter's claim that his net 6 year term to serve is excessive. However, we remand the case for reconsideration of Buckwalter's sentence because the superior court erroneously found that a certain statutory aggravating factor applied to the sentence for scheme to defraud.

---

**1.** AS 11.46.100(1); AS 11.46.120(a)(1); AS 11.16.110(2).

**2.** AS 11.46.600(a)(1); AS 11.16.110(2).

In October 1997, Buckwalter pawned a lawn mower at a pawn shop in Anchorage. While checking pawn shop records, Detective James Scroggins of the Anchorage Police Department discovered that the lawnmower Buckwalter pawned had been reported stolen by an Anchorage landscaping company.

Detective Scroggins checked Buckwalter's activity in the police department's pawn shop database and discovered that the pawn shop lists showed that he and his wife, Donna Buckwalter, had pawned hundreds of items between July 1996 and September 1997. Further research by Scroggins confirmed that some of these items were reported stolen, so Scroggins arranged for police surveillance of the Buckwalters.

The police started following the Buckwalters in October 1997. They saw the couple stealing items from Wal–Mart and Carrs stores and pawning those items at pawn shops. The police finally arrested the Buckwalters on October 24, 1997, after they watched them steal a stereo from the Carrs store in Eagle River and pawn it at a Cash Alaska pawn shop on Muldoon Road. The truck Buckwalter was driving when he was arrested had been reported as stolen from ABC Motor Home Rentals.

Buckwalter told police that he was addicted to heroin and that he had stolen the property to pay for drugs. Buckwalter identified more than seventy items on the pawn lists that he was sure he had stolen, many of them from Wal–Mart. At grand jury, Detective Scroggins testified that most of the stolen goods were "new-type" items. Scroggins testified that the goods Buckwalter identified as stolen, combined with the items the police saw him steal in October, totaled more than $25,000, the statutory minimum for first-degree theft. A copy of the pawn lists that included check marks identifying the goods Buckwalter admitted he had stolen was presented to the grand jury. The State also offered testimony that the police saw Buckwalter stealing items from Wal–Mart and Carrs that were not on the pawn lists and that were worth close to $900.

The grand jury jointly indicted the Buckwalters on one count of scheme to defraud, one count of first-degree theft, and one count of vehicle theft in the first degree.[3]

Buckwalter moved to dismiss the indictment, arguing that (1) the grand jury had not been adequately instructed that a scheme to defraud cannot be based on ad hoc instances of fraud, but requires an overall intent or plan to defraud five or more persons; (2) the prosecutor had failed to present exculpatory evidence in the form of statements by Donna Buckwalter that the thefts were spontaneous; (3) the State presented insufficient evidence that Buckwalter had stolen $25,000 or more; and (4) the State presented insufficient evidence that the vehicle was stolen. Donna Buckwalter joined in this motion and argued separately that the trial court had failed to instruct the jury that it could aggregate thefts to reach $25,000 only if the thefts were part of one course of conduct.[4] Superior Court Judge Larry D. Card denied all the motions.

At trial, the State presented evidence that the Buckwalters had pawned items, many of which Buckwalter had admitted were stolen, at five Cash Alaska pawn shops and eight other pawn shops in Anchorage and Eagle River. An assistant manager for the Wasilla Wal–Mart produced a list of the 1997 retail values of property Buckwalter had admitted to stealing from Wal–Mart and arrived at a total of more than $22,000. The State presented evidence of more stolen items for a total of $26,762.54.

The jury found Buckwalter guilty of first-degree theft and scheme to defraud. The jury was unable to reach a verdict on first-degree vehicle theft and the court declared a mistrial on that count.

Judge Card sentenced Buckwalter to 6 years with 1 year suspended for first-degree theft and 5 years with 1 year suspended for scheme to defraud. The court ordered Buckwalter to serve 1 year of the sentence imposed for scheme to defraud consecutively to the theft. The court also revoked Buckwalter's probation in an unrelated case and im-

---

**3.** AS 11.46.360(a)(1).

**4.** *See* AS 11.46.980(c).

posed 360 days consecutive to the sentence in this case.

*Discussion*

*Buckwalter's grand jury claims*

■ Buckwalter raises several claims relating to his indictment that the superior court rejected. First, he renews his claim that the State presented insufficient evidence that the value of the property exceeded $25,000, the jurisdictional minimum for first-degree theft.

■ The grand jury must indict a defendant "when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant."[5] When we review the sufficiency of the evidence presented in support of an indictment, we must decide if the evidence before the grand jury presented a sufficiently detailed account of criminal activity and the defendant's participation in that activity to meet that standard.[6]

Detective Scroggins testified at the grand jury. Scroggins told the grand jurors that he had asked Buckwalter if any of the hundreds of items on the lists of property pawned by him and Donna Buckwalter were not stolen. Scroggins testified that Buckwalter said "probably not." Buckwalter told Scroggins that he owned a chainsaw, but the pawn lists showed that Buckwalter had pawned approximately fifteen chainsaws in the period from March through September 1997. Buckwalter marked more than seventy items on the lists that he was "sure" he had stolen. In addition to the items on the pawn lists, the grand jury heard evidence of items Buckwalter stole while under police surveillance, which were worth close to $900.

Scroggins testified that his duties included the obligation to judge the value of stolen items. He estimated that the value of the items Buckwalter admitted to stealing, and those the police observed him steal, exceeded $25,000. We conclude that this evidence provided the grand jury with a rational basis for concluding that Buckwalter's theft totaled at least $25,000.[7]

■ Next, Buckwalter argues that the State failed to present exculpatory evidence to the grand jury. Although Buckwalter made an exculpatory evidence claim below, the claim he now makes is not the claim he advanced in the superior court. Now Buckwalter argues that the State knew one of the pawn shops he frequented was not part of his scheme to defraud because the pawn shop operator was aware that the goods were stolen. Because Buckwalter did not raise this claim before the superior court, we conclude that Buckwalter waived this claim.[8]

■ For his final grand jury claim, Buckwalter argues that because the State aggregated a series of thefts to reach the $25,000 value needed to prove first-degree theft, the State should have instructed the grand jury that it had to find that the aggregated thefts comprised a single course of conduct.

The common law allowed aggregation of misdemeanor thefts to support a felony charge only if the thefts were from the same owner at the same time and place and were motivated by a single criminal intent.[9] Alaska's aggregation statute, AS 11.46.980(c), is adapted from the less rigid Model Penal Code approach. Model Penal Code § 223.1 takes a "middle ground" between the common law requirement of "unity of place, time, and victim" and the unlimited aggregation of

5. Alaska R.Crim. P. 6(q).

6. *See Taggard v. State*, 500 P.2d 238, 242 (Alaska 1972); *Marion v. State*, 806 P.2d 857, 859 (Alaska App.1991).

7. Although Buckwalter argues that his conviction for first-degree theft should be reversed, even if Buckwalter had prevailed on this claim, it appears that the State would be entitled to request that a conviction be entered for second-degree theft. *See State v. Ison*, 744 P.2d 416, 420 (Alas-

ka App.1987); *Nix v. State*, 624 P.2d 823, 824–25 (Alaska App.1981).

8. *See* Alaska R.Crim. P. 12(b)(2), (e); *Gaona v. State*, 630 P.2d 534, 537 (Alaska App.1981).

9. *See generally Turner v. State*, 636 S.W.2d 189, 195 (Texas Crim.App.1980); *State v. Garman*, 100 Wash.App. 307, 984 P.2d 453, 456 (1999); Model Penal Code (MPC) § 223.1(2)(c) cmt. 3(b) at 141–42 (1980); *Larceny–Takings as Single or Separate*, 53 A.L.R.3d 398 (1973).

thefts permitted by some state criminal codes.[10] The commentary explains:

> The degree of the actor's disregard of property rights cannot always be judged by looking at the amount which he takes at a single moment from a single person. The bank teller who day after day steals $20 from his employer will have $600 at the end of a month and clearly should be regarded as engaged in felonious theft. The driver of a department store delivery truck containing hundreds of parcels, each worth less than $50, ought not to be regarded as a petty thief who is guilty of multiple offenses when he sells the contents of the truck to a "fence" and makes off with the proceeds. A swindler who moves along the street cheating housewives out of individual petty amounts similarly ought to be punished for the aggregate misconduct, even though both the place and the victim change with each transaction.[11]

The commentary to the Alaska Revised Criminal Code indicates that the legislature intended to follow the Model Penal Code,

aggregating separate thefts where a course of conduct is "calculated enough" to suggest a need for felony punishment.[12]

We have not issued a published decision holding that a jury finding of a single "course of conduct" is required when the state aggregates separate thefts. Virtually all the jurisdictions that have considered this issue (and that generally follow the Model Penal Code approach) have concluded that a jury must decide whether separate thefts are part of one course of conduct for purposes of aggregation.[13] Several courts have explicitly held that a finding of one course of conduct is an element of theft that must be included in the indictment when the government relies on aggregation to determine the degree of theft.[14]

■ We conclude that Alaska's aggregation statute was enacted to require proof of a single course of conduct. The legislative commentary to the aggregation statute states that its purpose was to increase the potential punishment for individuals who had engaged in a "calculated" series of thefts.[15]

**10.** MPC § 223.1(2)(c) cmt. 3(b) at 141–42 & n. 37 (citing La.Rev.Stat. § 14:67, which permits aggregation of takings "by a number of distinct acts of the offender").

**11.** *Id.*

**12.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 34–35, 1978 Senate Journal 1399 (quoting Proposed Revision of the Michigan Criminal Code at 222 (Mich. State Bar 1967)). The Alaska commentary provides the following examples:

> [A] bus driver or several bus drivers might pursue a scheme in which each day he or they would withhold not more than two or three dollars from the day's receipts. Or a transient operator might move from house to house in a neighborhood promising to seal roofs at $65 a roof, either absconding with the payment or dabbing at the roof with a few cents worth of tar. In either instance the employer, the householder and the community incur substantial financial loss. The ... course of conduct is calculated enough that it suggests a need for a substantial term [of] imprisonment or a period under probation. However, so long as each taking is considered a separate offense all the acts will be in the misdemeanor category only ... By aggregating the amounts, the defendant may be brought into the felony range of punishments[.]

*Id.*

**13.** *See, e.g., State v. Desimone,* 241 Conn. 439, 696 A.2d 1235, 1244 (1997) (citing Conn. Gen. Stat. § 53a–121(b)); *State v. Barthell,* 554 So.2d 17, 18 (Fla. 3d DCA 1989) (citing Fla. Stat. § 812.012(9)(c)); *State v. Amsden,* 300 N.W.2d 882, 886 (Iowa 1981) (citing Iowa Code § 714.3); *State v. Sampson,* 120 N.H. 251, 413 A.2d 590, 592 (1980) (citing N.H.Rev.Stat. § 637:2V(a)); *State v. Damiano,* 322 N.J.Super. 22, 730 A.2d 376, 392–93 (1999) (citing N.J. Stat. 2C:20–2b(4)); *State v. Baca,* 123 N.M. 124, 934 P.2d 1053, 1056 (1997) (citing MPC § 223.1(2)(c)); *State v. Johnston,* 478 N.W.2d 281, 283 (S.D. 1991); *Turner,* 636 S.W.2d at 196 (citing Tex. Penal Code § 31.09); *State v. Garman,* 984 P.2d at 457 (citing former Wash. Rev.Code 9A.56.010(17)(c) (1998)). *But see State v. Heslop,* 842 S.W.2d 72, 75 (Mo.1992) (en banc) (holding that aggregation statute serves the limited purpose of permitting the *state* to combine the value of property stolen during a single course of conduct to determine if the defendant should be charged with a class C felony or a lesser offense).

**14.** *See, e.g., State v. Childs,* 242 N.J.Super. 121, 576 A.2d 42, 47 (1990); *Miller v. State,* 909 S.W.2d 586, 589 n. 4 (Texas App.1995).

**15.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 34–35, 1978 Senate Journal 1399.

The term "calculated" suggests that an overarching scheme or plan is required. Traditionally, courts have treated this question of intent as one of fact for the jury,[16] and there is no indication in the legislative history of Alaska's statute [17] or in the commentary to the Model Penal Code [18] to suggest that the legislature intended to depart from this practice.

Buckwalter's grand jury was not instructed that they must find that the thefts were committed in one course of conduct. To charge a defendant with first-degree theft, the prosecution must convince the grand jury that the stolen property has a value of $25,000 or more.[19] Because there was no evidence before the grand jury that any of the individual items that Buckwalter stole had a value of $25,000, the grand jury's indictment necessarily was based on the aggregation of separate thefts. Because AS 11.46.980(c) permits aggregation only when thefts are pursuant to one course of conduct, the State should have instructed the grand jury on that requirement. The State concedes that this was error.

However, the State argues that this error was harmless because the grand jurors must have understood that they were dealing with a related series of thefts and that the State's theory of the case was based on the aggregated value of stolen property. The State argues that this is apparent because if the grand jury had not found that the thefts were committed pursuant to a single course of conduct, the grand jury would not have indicted Buckwalter for engaging in a scheme to defraud. We agree.

Because the grand jury must have found that the series of aggregated thefts was committed in a single scheme, we conclude that there is no reasonable possibility that the grand jury would have reached a different result if they had received a proper course of conduct instruction.[20]

*Buckwalter's challenge to the jury instructions*

■ Next, Buckwalter contends that his conviction should be reversed because of a purported mistake in the jury instructions relating to scheme to defraud.

The State's theory of prosecution was that Buckwalter had committed a scheme to defraud under AS 11.46.600(a)(1)—that he had "engage[d] in conduct constituting a scheme to defraud five or more persons or to obtain property ... from five or more persons by false or fraudulent pretense, representation, or promise." Specifically, the State contended that Buckwalter had defrauded five or more pawn shops by falsely representing that he owned the property he was pawning (when, in fact, he had stolen it).

When Judge Card and the parties discussed jury instructions, Buckwalter's attorney suggested that the jury should be told expressly that the pawn shops were the alleged victims of the scheme to defraud. Otherwise, the defense attorney suggested, the jury might convict Buckwalter based, at least in part, on the fact that he had stolen property from Wal–Mart and other retailers (who are also "persons" under the law). Judge Card agreed with Buckwalter that the jury's consideration of potential victims should be limited to the pawn shops. But after the prosecutor declared that she would confine herself to arguing that the pawn shops were the intended targets of the scheme to defraud, the judge decided that no clarifying instruction was needed.

This matter arose again during jury deliberations after the court received a note from the jury. This note read:

Re: Instruction 10/2nd part

We are having trouble [with the phrase] "knowingly engaged in conduct constituting a scheme[.]"

---

16. *See* 53 A.L.R.3d at 407–08.

17. *See* Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 34–35, 1978 Senate Journal 1399.

18. *See* MPC § 223.1(2)(c) cmt. 3 at 138–44.

19. *See* AS 11.46.120; AS 11.46.110(b).

20. *See State v. Waskey,* 834 P.2d 1251, 1253 (Alaska App.1992) (dismissal of charge not required where there is no reasonable possibility that the grand jurors' decision would have changed if they had received the requested instruction).

We are confused about how to define conduct in regard to "conduct constituting a scheme[.]"

Example[:] is "conduct" stealing goods [?]

[I]s "conduct" pawning stolen goods [?]

After Buckwalter's attorney was informed of this note, he renewed his request for an instruction to clarify that the pawn shops were the only alleged victims of the scheme to defraud. The defense attorney argued that the jury note showed that at least some jurors were thinking about convicting Buckwalter for scheme to defraud based on his thefts from retailers. But Judge Card again declined to give the requested instruction. Instead, he told the jury that it could "consider all of the ... circumstances and the reasonable inferences which [might] be drawn from them in determining whether the defendant 'knowingly engaged in conduct constituting a scheme.' " In addition, Judge Card directed the jury to review the instructions defining the elements of scheme to defraud and requiring the jury to find a joint operation of culpable mental state and conduct before they could convict Buckwalter of this crime.

On appeal, Buckwalter asserts that Judge Card committed error when he failed to give the requested clarifying instruction. Buckwalter renews his argument that, without such an instruction, the jury might have relied on Buckwalter's thefts from Wal–Mart and other retailers when the jury convicted him of scheme to defraud.

But the jury was entitled to consider and rely on Buckwalter's thefts from Wal–Mart and other retailers when they assessed whether Buckwalter had engaged in a scheme to defraud. Although the State's theory was that Buckwalter had defrauded the pawn shops, he obviously could not have done this without stealing the goods that he later pawned. Thus, a jury reasonably could find that Buckwalter's series of thefts from retailers was a necessary component of Buckwalter's plan to obtain money fraudulently from pawn shops. There was no error in allowing the jury to consider and rely on those thefts in reaching its conclusion that Buckwalter had engaged in a scheme to defraud.

To the extent that the jury instructions failed to state explicitly that the pawn shops, not the retailers, were among the alleged five or more targets of Buckwalter's scheme to defraud, the summations of both the prosecutor and the defense attorney clarified this issue for the jury. In their final arguments, both the prosecutor and the defense attorney stressed that the pawn shops were the "persons" referred to in the scheme to defraud instruction. We have repeatedly held that the arguments of the parties can cure flaws or omissions in the jury instructions.[21] In Buckwalter's case, we reach a similar conclusion: any arguable omission in the jury instructions was cured by the arguments of the parties.

### Buckwalter's attack on his sentence

Finally, Buckwalter argues that his sentence is excessive. Scheme to defraud and first-degree theft are class B felonies. Buckwalter was a second felony offender and faced a presumptive term of 4 years' imprisonment.[22] Judge Card found that several statutory factors from AS 12.55.155 had been proven: (c)(8) (Buckwalter had a prior criminal history involving repeated instances of assaultive behavior); (c)(9) (Buckwalter knew that his offenses involved more than one victim); (c)(21) (Buckwalter had a history of repeated criminal conduct similar to the crimes for which he was being sentenced); and (d)(9) (least serious conduct within the definition of first-degree theft).

In weighing the aggravating and mitigating factors, Judge Card gave the greatest weight to Buckwalter's repeated violation of criminal laws, characterizing Buckwalter as a "one-man crime spree." Buckwalter had a prior felony conviction for second-degree theft in 1988, and numerous misdemeanor

---

**21.** *See Braun v. State,* 911 P.2d 1075, 1081 (Alaska App.1996); *Norris v. State,* 857 P.2d 349, 355 (Alaska App.1993); *O'Brannon v. State,* 812 P.2d 222, 229 (Alaska App.1991).

**22.** AS 12.55.125(d)(1).

convictions, including a 1997 conviction for disorderly conduct and 1996 convictions for assault, larceny, and shoplifting. Judge Card placed secondary emphasis on the fact that Buckwalter stole from and deceived multiple victims to feed his heroin addiction. Judge Card put the least weight on Buckwalter's prior assaults against his wife, which included an assault conviction and a disorderly conduct conviction that Judge Card treated as "effectively an assault case" because it had been reduced pursuant to a plea agreement. Judge Card found one mitigating factor: that the theft charge was the least serious included in the definition of the offense because the State's proof only slightly exceeded the statutory minimum of $25,000. He found that Buckwalter's scheme to defraud conviction was not mitigated because it was a typical offense.

In applying the *Chaney*[23] factors to determine the amount by which the presumptive term should be adjusted, Judge Card emphasized community condemnation and reaffirmation of societal norms. He also noted that Buckwalter had a substantial history of incarceration and had failed to take advantage of numerous opportunities for rehabilitation and treatment.

Buckwalter argues that the aggravating factors found by the court did not warrant its deviation from the presumptive term for his offenses because only one of his prior theft offenses was a felony; his prior assaults were not particularly serious; and in each offense, the State had to prove that Buckwalter had victimized several entities. He also argues that he should have been sentenced to concurrent terms because his theft and scheme to defraud offenses affected the same societal interests.

▮ The record supports Judge Card's conclusion that Buckwalter's prior criminal history was an aggravating factor. Buckwalter's history of thefts and substance abuse spanned ten years and the presentence report was not optimistic about his prospects

for reform, noting that Buckwalter historically had "failed to follow through with treatment" and "there is no reason to imagine that anything has changed now." Judge Card's finding that Buckwalter had a history of assaultive behavior was supported by two convictions related to domestic violence against his wife. Judge Card rejected evidence of uncharged assaults.

▮ But Judge Card erred when he concluded that the scheme to defraud was aggravated because Buckwalter knew that his offense involved more than one victim. Under AS 12.55.155(e), "[i]f a factor in aggravation is a necessary element of the present offense ... that factor may not be used to aggravate the presumptive term." Buckwalter was convicted for engaging in conduct constituting a scheme to defraud five or more persons. Because that offense requires a finding that Buckwalter intended to defraud five or more persons, it cannot be aggravated because Buckwalter knew more than one victim was involved.

▮ Buckwalter also claims that he should have been sentenced to concurrent terms for the theft and scheme to defraud. Judge Card ordered Buckwalter to serve 1 year of the scheme to defraud sentence consecutively. Under AS 12.55.025(g)(1), a court has discretion to impose concurrent sentences for multiple convictions if the crimes violate similar societal interests. But here, though Buckwalter's offenses were closely intertwined, his thefts from Wal–Mart and other businesses and his misrepresentations to the pawn shops violated sufficiently distinct social norms to warrant a consecutive sentence.[24]

▮ Buckwalter also claims that Judge Card failed to consider the totality of the circumstances in imposing a consecutive sentence on a probation revocation in an unrelated misdemeanor case. But this claim was inadequately briefed in Buckwalter's opening brief, so we consider it waived.[25] Further-

---

**23.** *See State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970); AS 12.55.005.

**24.** *Cf. Coleman v. State,* 621 P.2d 869, 885 (Alaska 1980).

**25.** *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

more, Buckwalter was obliged to designate a sufficient record for a meaningful review of his claim, but he did not include a record for the misdemeanor case.[26]

From our review of the entire record, we conclude that Buckwalter's sentence is not clearly mistaken. However, because Judge Card's finding on an aggravating factor relating to scheme to defraud was impermissible, we will remand the case for Judge Card to reconsider the sentence he imposed without relying on that aggravating factor.

*Conclusion*

The judgment of the superior court is AF-FIRMED. The case is REMANDED for the superior court to reconsider Buckwalter's sentence in light of our conclusion that the superior court erroneously found an aggravating factor. We do not retain jurisdiction.

26. *See Ketchikan Retail Liquor Dealers Ass'n v. State, Alcoholic Beverage Control Bd.,* 602 P.2d 434, 438–39 (Alaska 1979) *modified,* 615 P.2d 1391 (Alaska 1980) (a party's failure to designate a record to support the party's claims justifies a reviewing court in deciding those claims against the party).