# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY.

JUNE TERM, 1882.

## STATE v. CHRISTOPHER T. MAGRATH.

1. An indictment will not be quashed on the ground of its not being endorsed as a "true bill," or signed by the foreman of the grand jury.
2. The defendant was a member of the common council of Cape May, and was indicted, under the statute, for furnishing supplies which had been paid for by such council; to prove such payment, the treasurer of the city testified that he made such payment, and that the council had, by resolution, ratified the same. *Held*, that such proof of the contents of such resolution was illegal.

From the Cape May Oyer and Terminer. Motion for a new trial sent to this court for its advisory opinion.

Argued at February Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the motion, *W. E. Potter.*

For the state, *J. R. Hoagland.*

227

State v. Magrath.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   Before the Oyer and Termi-
ner, a motion was made to quash the indictment in this case
for the reason that it was not endorsed with the signature of
the foreman of the grand jury, nor marked with the custom-
ary formula of its being a "true bill," and it was strongly
pressed, on the argument before this court, that such a mode
of authentication was indispensable to the legality of the pro-
cedure.

According to the ancient English methods, it may be rea-
sonably supposed that the form of authentication in question
was an essential part of criminal practice.  In that system the
endorsement by the foreman was the only certification to the
court of what the action of the grand inquest had been in any
given case, and in the absence of such certification there was
nothing on the record, or in any part of the conduct of mat-
ters, to indicate, either distinctly or obscurely, whether a bill
in a particular case had been found or not found.   The fact
that a bill had been presented to the court, in open session, by
the grand jury, afforded no intimation whatever touching the
views of that body with respect to it.   This unavoidably re-
sulted from the course of the proceedings, which were con-
ducted in this wise: Bills, or formal accusations of crime,
were drawn up and presented to the grand jury, who, after
investigation, if they thought any particular accusation
groundless, endorsed upon it the word *ignoramus*, or the
phrase "not found," or if the opposite opinion was enter-
tained, then the bill was endorsed with the words "a true
bill," and such bills, some being thus certified to have been
found, and others, to have been ignored, were, in a promiscu-
ous body, handed in by the grand jury to the court.   It is
manifest, therefore, that in such a state of affairs the court
had nothing to guide it in ascertaining the purpose of the
grand inquest in any particular instance except this endorse-
ment upon the bill, and it is not surprising, therefore, to find
the court, as was the case in *King* v. *Ford, Yelv.* 99, saying
that "the endorsement is parcel of the indictment, and the

State v. Magrath.

perfection of it." In fact, however, it is obvious that such an endorsement was no part of the bill, but was the extrinsic *indicium* that the grand jury had officially decided to make the accusation contained in the indictment. The endorsement that the bill was a " true bill " was the formal and sufficient certification of that essential fact, and in the absence of such a certificate there was absolutely nothing before the court to show such essential fact.

But although this undoubtedly was the settled course of the English practice in this respect, and although, from the nature of such practice, the omission of an endorsement, in one of the usual modes, upon an indictment, would have left it entirely uncertain whether such bill had been found or not found, I do not perceive that it was ever decided at common law that such method of certification of the purpose of the grand jury was the only admissible method. All that appears to have been decided is that some certificate in this respect was necessary, and we also know that the one above described was the approved form in vogue. No judgment has declared that if the finding of a bill by the grand inquest had been made to appear in a manner equally certain with that which arises from the usual endorsed certificate of the fact, that such an authentication would have been insufficient and invalid. The object aimed at is, that the court should be informed, with the requisite certainty, that the inquisitorial body has found the accusation true, but the mode of giving such information is but the form of the transaction.

But in this state, as every practitioner is aware, the mode of proceeding with respect to the particular in question is very different from the practice above described. In our procedures, bills are not drawn up beforehand and presented for adoption or rejection by the grand jury, but, to the contrary, they are drawn subsequently to the investigation, and consequently there are no bills in this course of law which are marked " not found." The result is, that all the bills which the grand jury bring into court are such as have been found by them, and therefore the act of presenting them to the court is a certification that they have been officially found.

The question thus, then, arises whether such an authentication has not that degree of trustworthiness that it ought to satisfy all legal requirements. I confess that I do not see why such an assurance as the grand jury makes to the court on this subject, in our practice, should not be held to be sufficient. The bills presented are in court openly declared by the grand jury to be the bills which they have found, and such bills are at the same time handed to the officer of the court, to be by him filed. Such a proceeding, the court and the grand jury being thus in contact, would seem to exclude all reasonable apprehension of the intervention of error or imposition. It was in this mode that the bill now before the court was brought into the Oyer and Terminer, and it seems to me that it is putting a strain upon common sense to infer that there is the least doubt that it was duly found by the grand inquest. This being so, I am unwilling to hold that the omission of a form will vitiate the proceeding. In *Rookwood's Case*, 13 *How. St. Tr.* 139, Chief Justice Holt placed the subject in a very reasonable light. He says: " An indictment is not an indictment till it be found; it is only a writing prepared for the ease of the jury and for expedition; it is nothing till it is found, for the jury make it an indictment by finding it; they may alter what they please, or refuse it absolutely. And if the jury, upon examining the witnesses, would only present a matter of fact, with time and place, the court might cause it to be drawn up into form, without carrying it to the jury. Again, there needs no *billa vera*, for that is only the jury's owning that which the court has prepared for them." The grand jury in the present instance having owned the bill as their finding, I think it was by that means sufficiently identified and authenticated.

The American authorities are in conflict on this subject; but I agree with Mr. Bishop, as he expresses himself in his book on Criminal Procedure, that the foregoing doctrine adopted by me is that which is " best sustained by reason, and as well sustained by authority as any other." 1 *Crim. Pro.*, § 141.

This first ground of objection cannot be sustained.

The remaining exception taken to the proceedings at the Oyer relates to the admission of certain testimony.

The indictment charged that the defendant, being a member of the city council of Cape May, unlawfully did furnish supplies to and for the city of Cape May, the expense of which supplies was paid by the city council, of which the said Christopher T. Magrath was a member.

The gravamen of the offence was the payment of these moneys by the body to which the defendant belonged. It was therefore incumbent on the prosecution to show not only payment, but payment by this city council.

The testimony on the part of the state on this subject was this: The treasurer testified that he made the payment to the defendant for these supplies; that he made it irregularly, without the order of the common council, and in order to show the assent of common council to such act, he proceeded to state that the council subsequently, by a formal resolution in their minutes, ratified the payment. The defence insisted that if such resolution was passed, the proper proof was the minutes of the common council, and that parol evidence was not admissible and could not supply its place. The evidence objected to was admitted, and I think that in this particular an error in law is exhibited. The action of the common council was a necessary part of the case of the state, and as there was written and formal evidence of such action, secondary evidence, under the circumstances, should not have been introduced.

The rule for a new trial must be made absolute.