234 N.J. Super. 606 (1988)
561 A.2d 312
STATE OF NEW JERSEY
v.
DIETER M. BUTTERFOSS, DEFENDANT.
Superior Court of New Jersey, Law Division, Burlington County.
Decided September 29, 1988.
*607 William R. Barbour, Asst. Deputy Public Defender, (Anne T. Manning, Deputy Public Defender), for defendant.
James S. Ronca, Assistant Prosecutor (Stephen G. Raymond, Prosecutor).
*608 HAINES, A.J.S.C.
This opinion disposes of the pending motion to dismiss the indictment in the above matter, concluding that the terroristic threat count cannot be dismissed but that all other counts of the indictment must be dismissed.
The Court recognizes the rule that the power of dismissal is not to be exercised except upon the clearest and plainest grounds and that an indictment sufficient on its face survives the motion to dismiss if the Grand Jury has received at least "some evidence" as to each element of a prima facie case. State v. Vasky, 218 N.J. Super. 487 (App.Div. 1987). Those tests are applied here.

A. The Grand Jury Proceedings
Butterfoss was indicted on April 28, 1988, for interference with custody and making terroristic threats, a two count indictment. When that indictment was obtained, an assistant prosecutor appeared before the Grand Jury, advised it of the charges against Butterfoss, and, among other things, said:
The next charge is a  there was a charge of kidnapping that the State would recommend a no bill on. We will discuss that later.
Later, the assistant prosecutor said:
Finally, there is a charge of kidnapping that the State will recommend a no bill on. [The statutory provisions defining the crime of kidnapping were then recited.]
So in that particular charge, the State is recommending a no bill. You can consider that if you wish....
....
GRAND JUROR: Why was the State not recommending the kidnapping charge?
PROSECUTOR: Kidnapping charge? There has to be evidence that it was his purpose to kidnap the child, and to inflict bodily injury on the victim or to terrorize the victim or to terrorize another.
GRAND JUROR: The wife would be another, wouldn't she?
PROSECUTOR: She would definitely be another. The only question is, was it his intent to terrorize her.
GRAND JUROR: Absolutely, with the strings and the gag.

*609 PROSECUTOR: If you think it was, you can return a kidnapping charge on that. There was some concern as to whether or not it was something we could prove or whether or not that was the actual purpose, but if you feel there's enough evidence there, you can definitely return a bill on that.
GRAND JUROR: With all he was doing, telling her about the postcard and for him to contact her, that's something a kidnapper does. The way he went about it was not like a father that was just trying to see his child, and the fact that he hid the license plate, he hid the license plate, and all the stuff that he went through. He gave her all kinds of instructions pertaining to what a kidnapper would do.
PROSECUTOR: Okay. I think a lot of this  you definitely, if you disagree with the State, you can return a kidnapping charge. A lot of the comments are best left for deliberations as opposed to comments directed to me.
Any questions at all as to the law? Then I will leave it to your deliberations then.
The Grand Jury returned the initial two count indictment which did not include kidnapping.
On June 21, 1988, the assistant prosecutor presented the Butterfoss matter to the same Grand Jury for the second time, seeking a superseding indictment which would include a count for kidnapping. The following transpired:
PROSECUTOR: I have two matters this morning. The first one we will do is called Dieter Butterfoss. Now, if that name sounds familiar, it should. Back on April 26th I presented this matter. I think there's one person here today that wasn't here back on April 26 when we heard that matter before, so we will ask that she not participate.
After Dieter Butterfoss was presented some of the Grand Jurors had questions as to why the State recommended a no bill on the kidnapping charge, and that charge was in fact no billed. We read over the transcript and it did appear that some of the Grand Jurors had a question about the kidnapping charge, and at this point in time we are going to ask you to reconsider the matter.
At this time the State is going to take  the State is not going to be recommending a no bill at this time. It did seem that at that point, again, a few people had concerns about it, and the particular section we were dealing with under kidnapping was this. Basically, it says that a person is guilty of kidnapping if he unlawfully removes a person from his place of residence or business or a substantial distance from the vicinity where he is found or if he unlawfully confines another for a substantial period with any one of the following purposes, and one of the purposes for your consideration is to inflict bodily injury on or to terrorize the victim or terrorize another.
I believe it was that terrorizing another section that you people were thinking about, so at this point in time we do have the transcript and we can reread what the testimony was in the case if you don't remember it clearly, but if you do, and you wish to revote on this part, we will again indicate there were two other *610 charges that were billed at the time, which was terroristic threats and also a charge of interference with custody.
So, at this point in time, the State will again give it to your consideration, and at this time the State will not be recommending a no bill as to the kidnapping charge. Does everyone follow me as to basically what's going on? Again, we have the transcript here. If you wish to hear the testimony over again or read the testimony over again, you may. Why doesn't one person refresh your memory? Okay.
The Grand Jury then returned a second superseding indictment which included the kidnapping count.
The Grand Jury is an autonomous body charged not only to indict the apparently guilty but also to protect the apparently innocent. It acts independently of the prosecuting attorney and the judge. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). In State v. Hart, 139 N.J. Super. 565 (App.Div. 1976), the Court dismissed an indictment because of certain actions of an assistant prosecutor. The Grand Jury in that case, after hearing testimony including that of the defendant, decided not to indict. Later, responding to an inquiry from a juror in the presence of the entire Grand Jury, the assistant prosecutor said he thought the action was wrong. The Grand Jury, after being instructed by the Assignment Judge that it should act independently of the prosecutor's opinion, decided to reconsider the matter. It then returned an indictment. That indictment was dismissed by the Appellate Division which said:
In short, it is our considered view that while a prosecutor may assist the Grand Jury in the general manner above outlined, he may not participate in its deliberations or express his views on questions of fact, or comment on the weight or sufficiency of the evidence, or in any way attempt to influence or direct the Grand Jury in its findings  rather, the Grand Jury must act independently of any outside source. [at 567, 568]
The Hart rule was violated in two instances by the assistant prosecutor in this case. In the first place he improperly "recommended" that the Grand Jury no bill the charge of kidnapping, a recommendation with which the Grand Jury complied. Later, he returned to the same Grand Jury with a request that it reconsider the kidnapping question. No additional facts were presented. The Grand Jury was asked to rely *611 on its recollection of past testimony and was given the opportunity to review the transcript containing that testimony. Had the assistant prosecutor said no more, these circumstances would strongly indicate improper influence. When he asked the Grand Jury to reconsider the kidnapping charge he sent a clear message that it should indict Butterfoss on that charge and should do so on the basis of facts which he found insufficient in the first instance. Thus, the prosecutor strongly underlined an insistence that the Grand Jury return an indictment which it previously had decided not to return. That action, standing alone, reflects an influence which is not proper. The assistant prosecutor, however, went even further, twice advising the Grand Jury that the State would not recommend a no bill. In clear effect, he told the Grand Jury that it should indict, an instruction which interfered with its independence. Consequently, the kidnapping count in the indictment must be dismissed.

B. Terroristic Threats
N.J.S.A. 2C:12-3a, under which defendant was charged, reads in pertinent part as follows:
A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with purpose to terrorize another ... in reckless disregard of the risk of causing such terror....
The facts are sufficient to support this count of the indictment. Defendant's daughter Sara, who was attending a nursery school, was met by her mother in a parking area. Defendant, who had not seen either of them for about seven months, drove in, picked up Sara, put her in the back seat of his car and instructed the mother to get into the front seat. He told the latter he was going to take his daughter to California. Once in the car she noticed a paper bag on the floor containing small pieces of rope and cloth. He told her he had planned to break into her house, tie her up, gag her if she was uncooperative, and then take the child. In fact, he took the child to California and then called the mother, asking her to join them, in an *612 apparent effort to get the family back together. She did join him, but only after overcoming difficulties in finding the child, and stayed there with him for about three days.
These circumstances certainly presented the Grand Jury with some evidence of a present threat to commit a crime of violence with purpose to terrorize the mother. She was threatened by the expected loss of her daughter. She was confronted with ropes and gags. She was told of a prior intention to assault her, tie her and gag her. This is enough. The question turns on whether the surrounding circumstances were such that an ordinary person in the mother's position would have felt threatened and whether the defendant intended to frighten her; whether he intended to carry out the threat or whether the fear of the victim was actually induced are immaterial considerations. State v. Milano, 167 N.J. Super. 318, 321 (Law Div. 1979), aff'd, 172 N.J. Super. 361 (App.Div. 1980).
This count of the indictment will not be dismissed.

C. Interference with Custody
N.J.S.A. 2C:13-4a provides:
A person commits an offense if he knowingly takes or entices any child under the age of 18 from the custody of a parent ... when he has no privilege to do so, or he does so in violation of a Court order.
The defendant, absent a Court order, had the privilege to take the child; as a father his right to custody was equal to that of the mother. State v. Stocksdale, 138 N.J. Super. 312, 315 (Law Div. 1975). The issue, therefore, is whether he knowingly took the child in violation of a Court order. N.J.S.A. 2C:2-2b(2) provides:
A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that said circumstances exist or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.
At the time the defendant took the child a custody order was in effect. It placed custody of the child in the mother. The only testimony presented to the Grand Jury concerning the *613 defendant's knowledge of this order, however, was the following:
Q. And also when you received the restraining order and the temporary custody order, was he in court at that time?
A. No. They weren't able to serve him because he never gave me an address of where he was living. I told him on the phone that I was going to try and get temporary custody of Sara.
The mother told the Grand Jury that she said nothing to the defendant about the order at the time he took the child.
These facts are not enough to show that the defendant had knowledge of the custody order and therefore violated the statute. Full knowledge of the facts is required; he is not to be penalized because he failed to inquire. Morss v. Forbes, 24 N.J. 341, 359 (1957). 22 C.J.S., Criminal Law, § 31(3) at 111 explains:
When used in a prohibitory statute "knowingly" imports something more than carelessness or lack of inquiry. In such statutes it has been held to mean merely a knowledge of the existence of the facts constituting the crime or a knowledge of the essential facts and not to require knowledge of the unlawfulness of the act.
An exception to actual knowledge has been recognized: a parent who knows of a custody hearing and fails to attend acts at his peril in taking the child away. State v. Taylor, 125 Kan. 594, 264 P. 1069 (1928); Commonwealth v. Bresnahan, 255 Mass. 144, 150 N.E. 882 (Sup.Jud.Ct. 1926). In those cases the defendants had no actual notice of the order but knew enough to charge them with knowledge that an order had been made. The present facts do not fall within this exception.

D. Kidnapping
N.J.S.A. 2C:13-1b(2) provides:
A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes: ... (2) to inflict bodily injury on or to terrorize the victim or another....
The difficulty with the kidnapping count is the same one that infects the count for interference with custody.
*614 It is the general rule that knowledge of the existence of a custody order is a required element of a kidnapping charge. New Jersey courts have not passed upon the question. Courts which have and which have required knowledge, are People v. Lawrow, 447 N.Y.S.2d 213, 112 Misc.2d 494 (Nassau Dist.Ct. 1982); Hicks v. State, 158 Tenn. 204, 12 S.W.2d 385 (1928). Taylor and Bresnahan, cited above, may be considered exceptions but they relied upon facts which put the parent who abducted the child on clear notice that such an order existed. That notice, as discussed above, was not given to the defendant in this case.
Logic supports the general rule. Since both parents of a child have an equal right to custody, absent a Court order, it follows that a father cannot be deprived of that right without the notice that due process requires and, further, cannot be charged with a crime when he has exercised his right to custody without knowing that it has been denied by reason of a court order.
The kidnapping count of the indictment must be dismissed for these reasons in addition to the reason that the Grand Jury was improperly influenced.