60 A.3d 834

STATE OF NEW JERSEY, PLAINTIFF,
v. MARK J. ECKEL, DEFENDANT.

Superior Court of New Jersey
Law Division
Cape May County

Decided September 6, 2012—February 25, 2013.

*Saverio Carroccia,* Assistant Prosecutor, for plaintiff (*Robert L. Taylor,* Cape May County Prosecutor, attorney).

*Stephen Funk* for defendant.

BATTEN, J.S.C.

In this matter of first impression, this court determines that an assistant county prosecutor's informal, gratuitous comments to a grand jury, subsequent to its vote to indict, yet prior to its return of the indictment in open court, all regarding the quantum, quality, and significance of the evidence just presented, constitutes, to whatever degree unintended, a fundamentally unfair tactic violative of the proscription in *United States v. Hogan,* 712 *F.*2d 757, 759–62 (2d Cir.1983), *State v. Hart,* 139 *N.J.Super.* 565, 568, 354 *A.*2d 679 (App.Div.1976) (citing *U.S. v. Dionisio,* 410 *U.S.* 1, 93 *S.Ct.* 764, 35 *L.Ed.*2d 67 (1973)) and, more recently, *State v. Butterfoss,* 234 *N.J.Super.* 606, 561 *A.*2d 312 (Law Div.1988). For this reason, the indictment is dismissed *sua sponte.*[1]

---

[1] The motion to dismiss the indictment on other grounds was denied for substantive reasons set forth on the record.

## PROCEDURAL HISTORY

On February 14, 2012, a Cape May County grand jury returned, in open court, a two-count indictment against defendant Mark J. Eckel ("defendant"), charging (1) third-degree distribution of a controlled dangerous substance in violation of *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(3), and (2) first-degree drug-induced death in violation of *N.J.S.A.* 2C:35–9. The presentment predicate to that return consisted of examination of one witness, detective Katherine Gannon of the Office of the Prosecutor of Cape May County, by Assistant Prosecutor Saverio Carroccia ("prosecutor"). That presentment and reports upon which Gannon relied in her testimony to the grand jury establish, for purposes of this motion, the following.

## FACTS

On February 8, 2011, at approximately 6:00 pm, members of the Lower Township Police Department responded to 1514 Main Street in the Villas section of that township, following a report of an unconscious and unresponsive male later identified as Christian O'Rourke. Law enforcement transported O'Rourke to Cape Regional Medical Center; he died the following day. Investigation at the scene revealed the presence of drug paraphernalia, suggesting ingestion of heroin by O'Rourke just prior to loss of consciousness. Police officers also interviewed O'Rourke's girlfriend who was present at the time, Samantha Autuori, and his father. Autuori advised that she and O'Rourke had scrapped metal earlier that day, transporting the metal to a local recycling firm where they sold the metal. Intending to apply the proceeds to the purchase of heroin, they contacted defendant. He agreed to and did meet Autuori and O'Rourke in the parking lot of the Cape May Court House branch of Cape Savings Bank, where Autuori and O'Rourke purchased five paper folds of heroin from him. They then returned to 1514 Main Street, O'Rourke's residence, where they ingested the heroin. In the February 10 consensual intercept between Autuori and defendant, Autuori revealed that

she and O'Rourke each also ingested three Xanax tablets (2 milligrams) at 9:30 am on February 8. On the day prior, February 7, she and O'Rourke consumed twenty-nine Xanax tablets of the same strength throughout the day.

The autopsy report concluded that the cause of death was heroin toxicity.

On July 2, 2012, defendant moved to dismiss the indictment, arguing that (1) the State misled the grand jury, failing to present clearly exculpatory evidence in the presentment, and (2) the State was prosecuting defendant selectively. The State, in opposition, invoked *State v. Hogan*, 144 *N.J.* 216, 237, 676 *A.*2d 533 (1996) ("clearly exculpatory" evidence directly negates the guilt of accused and "bears some significant stamp of credibility in and of itself, and [is] not merely ... contradictory of the State's other proofs," *State v. Evans*, 352 *N.J.Super.* 178, 195, 799 *A.*2d 708 (Law Div.2001)). Following oral argument on August 2, 2012, the court denied the motion, concluding, on the record, that evidence that Autuori and O'Rourke consumed Xanax on February 7 and 8 was not clearly exculpatory. The court also found that the cause of death, as concluded by the coroner and disclosed by Gannon to the grand jury, amply supported the charge of drug-induced death, *N.J.S.A.* 2C:35–9, as charged in count two.

The court thereupon raised *sua sponte* the comments of the prosecutor to the grand jury subsequent to the vote to indict but prior to the return of the indictment in open court:

PROSECUTOR: Anyway, any further questions? *I'd like to close the record for deliberation.*

(Off the Record)

(Back on the Record)

PROSECUTOR: To answer your question first, Samantha Autuori, no criminal history. She was charged with possession of heroin initially, gave a statement. *She will be a state's witness at trial.* She is in PTI now. Which I think Christine told you it's kind of like on-reporting probation. All the questions you just asked are why I cannot stand drug induced deaths and why are they problematic at trial. *Because it seems like it's a good case.* The guy gave him heroin; the guy died. The problem is 12 Petit jurors, sir, as you referenced, many of them have a problem with convicting someone who voluntarily who is a junkie or abuses,

especially a drug like heroin, voluntarily takes it and then dies and then they have to sit there and say yes, I'm going to find him—this guy guilty of a first-degree. *Certainly what Mr. Eckel did under the law is absolutely a crime but it becomes problematic at trial because the victim gets put on trial.* Defense attorneys do that in a subtle way, but it's like, you know, he didn't know. I mean there are very few drug induced deaths where someone, who know, because if we felt the person tried to kill him or knew it would kill him they'd be charged with a homicide. A murder rather than this. So they become very, very difficult not to prove but to *get all 12 jurors to pull the trigger,* so to speak, on it. And routinely what happens is they get charged with a drug-induced death. And then I let them, I take that off the table and I let them plead to the maximum on the third degree distribution. Like a five must do 2–1/2, something like that. *Mr. Eckel is problematic because by a crazy twist of fate he is on probation. I prosecuted him over the last four years.* He is on probation for four indictable offenses and he got probation because when it came to certain matters of the case involving what law enforcement didn't do, search and seizure issues, potential proof issues. *He was on probation for four cases when this happened.* One of them a distribution. *He's since been re-sentenced about three months, maybe about October, he got re-sentenced on a violation of probation. And now he's serving eight years in state prison while waiting for this matter to resolve.*

On August 30, following supplemental oral argument on these prosecutorial comments, the court dismissed the entire indictment, placing its analysis and conclusions on the record. This written opinion now memorializes and supplements that decision.

## ANALYSIS

### Standards for the Dismissal of an Indictment

Under the New Jersey Constitution of 1947, no defendant may be compelled to stand trial for a crime unless the State first presents the matter to a grand jury and an indictment is returned. *N.J. Const.* art. I, ¶ 8. The grand jury must be presented with sufficient evidence to justify issuance of an indictment. The absence of any evidence to support the charges would render the indictment "palpably defective" and subject to dismissal. *State v. Hogan, supra,* 144 *N.J.* at 228–29, 676 *A.*2d 533.

A trial court, however, should not disturb an indictment if there is some evidence establishing each element of the crime sufficient to establish a *prima facie* case. *Id.* at 236, 676 *A.*2d 533; *State v. Vasky,* 218 *N.J.Super.* 487, 491, 528 *A.*2d 61 (App.Div.

1987). The Standard Grand Jury Charge instructs grand jurors that they "are not to return an indictment unless the State has presented evidence which together with the reasonable inferences [they] draw from the evidence ... leads [them] to conclude that (1) a crime has been committed and (2) the accused has committed it." *Standard Grand Jury Charge* (Apr. 25, 2006). The court should evaluate whether, viewing the evidence and rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it. *See State v. Reyes*, 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967) (explaining that the standard for evaluating sufficiency of grand jury evidence is "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt").

In establishing its *prima facie* case, however, "the State may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth.' " *Hogan, supra,* 144 *N.J.* at 236, 676 *A.*2d 533. An incomplete or imprecise grand jury instruction does not necessarily warrant a dismissal of the indictment; rather, the instructions must be "blatantly wrong." *State v. Triestman,* 416 *N.J.Super.* 195, 205, 3 *A.*3d 634 (App.Div.2010). An indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of the law. *State v. Ball,* 268 *N.J.Super.* 72, 119–20, 632 *A.*2d 1222 (App.Div.1993), *aff'd,* 141 *N.J.* 142, 661 *A.*2d 251 (1995), *cert. denied,* 516 *U.S.* 1075, 116 *S.Ct.* 779, 133 *L.Ed.*2d 731 (1996). Courts have exhibited a greater willingness to review grand jury proceedings when the alleged deficiency in the proceedings affects the grand juror's ability to make an informed decision whether to indict. *State v. Murphy,* 110 *N.J.* 20, 36, 538 *A.*2d 1235 (1987).

An indictment should be dismissed only on " 'the clearest and plainest ground.' " *State v. Perry,* 124 *N.J.* 128, 168, 590 *A.*2d

624 (1991) (quoting *State v. N.J. Trade Waste Ass'n,* 96 *N.J.* 8, 18–19, 472 *A.*2d 1050 (1984)). An indictment should not be dismissed "unless the prosecutor's error was clearly capable of producing an unjust result." *State v. Hogan,* 336 *N.J.Super.* 319, 344, 764 *A.*2d 1012 (App.Div.2001). The prosecutor's misconduct must be "extreme and clearly infringe upon the grand jury's decision-making function" in order to justify dismissal of the indictment. *Murphy, supra,* 110 *N.J.* at 35, 538 *A.*2d 1235.

### *Issues*

Two issues here pertain. First, the court must determine whether the comments by the prosecutor were made before or after the "return" of the indictment. If the comments followed the return, then they are of no moment to the validity of the grand jury's determination. However, if the comments preceded the return, then the court must resolve the second issue: whether those comments to the grand jury were of such nature and quality as to clearly infringe upon the grand jury's decision-making function. A finding in the affirmative supports dismissal of the indictment.

### Return of the Indictment

*Rule* 3:6–8(a), governing the finding and return of indictments, reads in pertinent part (emphasis added): "An indictment may be found only upon the concurrence of 12 or more jurors and *shall be returned in open court* to the Assignment Judge or ... to any Superior Court judge assigned to the Law Division in the county."

Ascertaining whether the prosecutor's comments occurred before or after return of the indictment is critical to the determination of whether those comments unfairly intruded on the grand jury's decision-making function. This requires an examination into when "return" of an indictment occurs.

In *State v. Rhodes,* 11 *N.J.* 515, 95 *A.*2d 383 (1953), the Supreme Court was asked to confront a similar question. The defendant was accused of a crime with a two-year statute of limitations.

Two days before the statute of limitations was to expire, a grand jury was convened and subsequently voted to indict. The grand jury, however, did not physically entrust the indictment to the court, apparently because the county judge was absent that day. The indictment was returned to court the following Monday, one day after the statute of limitations had expired. *Id.* at 519, 95 *A.*2d 383. The State argued that the indictment should have been considered returned two days before the expiration of the statute of limitations, since it was on that date when the grand jury voted to indict the defendant. The Supreme Court, however, found that argument to lack merit because the grand jury's action on that day "was in no sense final and could have been changed at any time prior to the return of the indictment." *Ibid.* In so holding, the Court stated that "[t]he return in open court constitutes the first objective act which renders the indictment effective under circumstances calculated to protect the proper legal interest of both the State and the defendant." *Id.* at 520, 95 *A.*2d 383. The Court concluded that, "[i]n common parlance, an indictment is said to be found when it has been voted upon and properly returned to the court." *Ibid.; see also State v. Davis,* 107 *N.J.L.* 199, 204, 152 *A.* 782 (Sup.Ct.1930) (ruling that, in order for an indictment to be valid, it "must not only be *found* by a grand jury, but also be *presented* by that body *during* its terms of service to the court in which it was impaneled. Until such presentment has been made, it is like the verdict of a petit jury which has been agreed to by the members of that body, but has not been rendered to the court in which it is functioning"); *State v. Unsworth,* 85 *N.J.L.* 237, 239, 88 *A.* 1097 (E. & A.1913) (stating that the indictment "becomes effective when handed to the court"); *State v. Magrath,* 44 *N.J.L.* 227, 229 (Sup.Ct.1882) (determining that "the act of presenting [indictments] to the court is a certification that they have been officially found").

Here, the grand jury voted on the indictment. Subsequent to the vote, but prior to the presentation of the indictment to the court, the prosecutor made the aforementioned comments to the grand jury regarding the quantum, quality, and significance of the

evidence presented. Afterward, the grand jury entrusted the indictment to the court.

Applying the logic of *Rhodes*, the indictment was not found until it was physically returned to a Judge of the Superior Court in open court on February 14, 2012. Because the prosecutor interjected himself between the vote and the return, any communications by him to the grand jury had the potential to render the returned indictment defective. This is so because the determination of the grand jury could have been changed at any time after the comments and prior to physical return of the indictment. *Rhodes, supra,* 11 *N.J.* at 519, 95 *A.*2d 383.

As such, the court must now examine whether the comments made by the prosecutor to the grand jury were of such nature and quality as to render the indictment defective, requiring its dismissal.

### Prosecutor's Comments to the Grand Jury

In *State v. Hart, supra,* 139 *N.J.Super.* 565, 354 *A.*2d 679, the grand jury voted not to indict the defendant. Immediately following the vote, and while the assistant prosecutor was in the grand jury room, one or more of the grand jurors sought his view on the grand jury's vote to not indict. The prosecutor subsequently paraphrased his response thusly: "I thought the action they had taken was wrong. I did express that to the entire grand jury. It was a situation where money had been passed from one individual to another individual and the explanation given [by defendant] was a complete lie." *Id.* at 568, 354 *A.*2d 679.

The grand jury decided to reconsider the matter, and in so doing, returned an indictment against the defendant. On appeal, the court recognized that there is no impropriety in the prosecutor assisting in the investigation and examination of witnesses. Moreover, the court determined that it is permissible for the prosecutor to advise the grand jury as to the admissibility of evidence, the proper mode of procedure, and the law of the case as relates to the testimony. *Id.* at 569, 354 *A.*2d 679. However, the court

cautioned that a prosecutor "may not participate in [the grand jury's] deliberations, or express his views on questions of fact, or comment on the weight or sufficiency of the evidence, or in any way attempt to influence or direct the grand jury in its findings— rather, the grand jury must act independently of any outside source." *Id.* at 567–68, 354 *A.*2d 679. The prosecutor's comments in *Hart* "impinged upon the independence of the grand jury and improperly influenced its determination. Once a 'no' bill was voted, he should have refused to answer the inquiry of any of the grand jurors." *Id.* at 569, 354 *A.*2d 679.

The issue before the court in *State v. Childs*, 242 *N.J.Super.* 121, 127–28, 576 *A.*2d 42 (App.Div.1990) was whether the trial judge correctly dismissed an indictment because the deputy attorney general allegedly pressured the grand jury to return it. In order for the grand jury to better understand the intricacies of a complex case, the deputy attorney general outlined evidence he expected to produce, explained to the jurors in advance the witnesses' expected testimony, described how the testimony fit into the overall case, and commented after testimony about how it was significant to the total picture. *Id.* at 128, 576 *A.*2d 42. However, "[r]ecognizing that jurors might mistakenly treat his explanations as evidence, the deputy forcefully and repeatedly impressed upon them throughout the proceedings that his statements were not evidence and that the jurors had the responsibility of deciding for themselves what the evidence meant and whether it was sufficient to return an indictment." *Id.* at 128–29, 576 *A.*2d 42. The *Childs* court emphasized that, "without expressing his personal views on questions of fact, a prosecutor may fairly explain the significance of evidence placed before the grand jury to aid its understanding of a complex or unfamiliar course of events." *Id.* at 129, 576 *A.*2d 42. Ultimately, the court determined that "the deputy's statements ... did not cross the line that separates proper explanations of the evidence from improper expressions of defendant's guilt that would cause the jurors to lose sight of their responsibilities." *Ibid.*

Here, the prosecutor's statements to the grand jury prior to return of the indictment clearly run afoul of the proscriptions enunciated in *Hart.* By telling the grand jury that the accused absolutely committed the charged crime, the prosecutor expressed his views on questions of fact, commenting on the weight and sufficiency of the evidence. *Hart, supra,* 139 *N.J.Super.* at 567, 354 *A.*2d 679. Moreover, by informing the jury of the accused's criminal history, the prosecutor sought to influence the grand jury in its findings with regard to the charged offense. *Ibid.* Such commentary impinges upon the independence of the grand jury and its decision-making function. *Murphy, supra,* 110 *N.J.* at 35, 538 *A.*2d 1235. The prosecutor's statements crossed the line from proper explanation of the evidence to improper expressions of the defendant's guilt. *Childs, supra,* 242 *N.J.Super.* at 129, 576 *A.*2d 42. These comments also raise the spectre of residual consequence to deliberations by the same grand jury, in the same term, on different presentments that may or may not be factually similar. Because the prosecutor's misconduct was an extreme and clear infringement upon the grand jury's function, dismissal of the indictment is required. *Murphy, supra,* 110 *N.J.* at 35, 538 *A.*2d 1235.

## CONCLUSION

The prosecutor's comments to the grand jury regarding the quantum and quality of the evidence, as well as the accused's guilt, made after the vote to indict but prior to return of the indictment, improperly intruded on the grand jury's decision-making function and, at the very least, gave rise to an intolerable appearance of taint. In light of this prosecutorial misconduct, the court *sua sponte* dismisses, without prejudice, the indictment.