**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0819-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANTE ASTE, a/k/a DONTE
J. ASTE, DANTE AST,

    Defendant-Appellant.

_____

Submitted March 5, 2025 – Decided May 29, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 22-07-0787.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Rachel A. Neckes, Assistant Deputy Public Defender, of counsel and on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Alice Huang, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from a June 8, 2023 order denying his motion to dismiss an indictment. Having reviewed the record and considering the abuse of discretion standard, we affirm.

I.

This matter was presented to a Passaic County grand jury in July 2022. At the outset, the prosecutor advised the jurors that defendant was charged with first-degree robbery, "two counts of aggravated assault via pointing," "possession of a weapon [a handgun] for an unlawful purpose," and "unlawful possession of" a handgun. The prosecutor also advised she was "going to ask [the grand jury] to consider two counts of aggravated assault, but regular aggravated assault, . . . those would be grand jury action counts."

The prosecutor explained her "feeling . . . that there should be two counts of aggravated assault, but that they just shouldn't be pointing counts. So what I would ask . . . [is for the grand jury] to [n]o [b]ill the pointing and consider the additional counts, or if it's easier procedurally we could . . . amend those . . . ." The prosecutor advised she could "amend them on the complaint if [the grand jury] decide[s] to do that."

A-0819-23

The grand jury heard testimony from one witness, a patrol officer from the Paterson Police Department. The officer testified that she was dispatched to a "domestic assault . . . involving a handgun." Upon her arrival, the officer was "flagged down by a bystander who indicated that the male with the handgun was in the backyard." The male was identified as defendant. Defendant denied he had "a handgun on his person." In addition, defendant's girlfriend stated she "didn't see a handgun on [defendant]."

The officer testified that another person stated defendant "walked up to her and hit her in the back of the head and stated, [g]ive me all you got." Further, that person stated that defendant "smacked [her brother] across the fac[e] with a gun." An "independent witness" confirmed this "version of [the] events." When the officer observed the brother in the hospital he had a "small laceration to [his] right-upper lip." The brother confirmed defendant took "a black pistol and hit him in the face, causing injury to his upper right lip." The officer testified that "no gun was recovered in th[e] case," nor "was there any surveillance or anything to that effect recovered."

Following the testimony, the prosecutor explained:

> [T]here's really no allegation that the weapon was pointed at anybody, although there is certainly an allegation that the weapon was used to assault two individuals. So that's why I was asking you to consider

A-0819-23

. . . aggravated assault with a deadly weapon, as opposed to aggravated assault via pointing.

. . . .

Then you have possession of a weapon for an unlawful purpose. You have the robbery obviously. Possession of a weapon for an unlawful purpose, that being a handgun, and unlawful possession of a weapon, that being a handgun.

Now no handgun [wa]s recovered in this case. There [wa]s no surveillance. There [were] no pictures. It is virtually impossible for us to prove that there was a handgun utilized in the offense, even though there's an allegation that there was a handgun utilized in the offense. And for that reason – we would have to prove the operability of a firearm, right? So for that reason I'm going to ask you to consider on the unlawful purpose an imitation handgun charge . . . . And because we know that whatever he had, whether it was an imitation or a BB gun . . . whatever he had, he utilized in the actual commission by assaulting them with it. . . .

So basically because we can't prove that it's a firearm, but we know that the testimony is that a weapon was utilized and there was actually corroborating testimony that this is exactly what happened, I still want you to consider the first-degree robbery charge, because there was a weapon used in the commission of a demand for money.

The prosecutor read the statute regarding aggravated assault with a deadly weapon. A juror asked a question: "If we don't know what sort of weapon they

4

used, how can we determine whether it's deadly?"  The prosecutor responded:

"There's a definition for deadly weapon, so I will read it to you."

> It's pretty all-encompassing, I will say, but under . . . [N.J.S.A.] 2C:11(1).  . . . .  Deadly weapon means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or, which in the manner it is fashioned, would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
>
> So it has more to do with the use.  I mean some weapons . . . for example, a firearm, we know that's capable of producing death if we can prove it was a firearm.  But everything else is basically, again, a circumstantial thing where looking at facts is it something that you feel like could be used to cause death or seriously bodily injury.  And pretty much we've seen a large array of items fall into that category.

The prosecutor advised the grand jury it had "the ability to bill it as is . . . .  But I am recommending that you consider these amendments with these facts."

Defendant was indicted on five counts:  (1) first-degree robbery, N.J.S.A. 2C:15-1(a)(1); (2) fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e); (3) third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); (4) third-degree aggravated assault, N.J.S.A. 2C:12-

A-0819-23

1(b)(2); and (5) fourth-degree unlawful possession of a weapon, an imitation firearm, N.J.S.A. 2C:39-5(d).

On May 8, 2023, the judge heard the parties' arguments on defendant's motion to dismiss the indictment. Defendant argued the manner in which "the State . . . characteriz[ed] the law . . . strip[ped] the grand jury of their independence in making . . . decisions." Defendant noted "there's no production of an alleged weapon or testimony from an officer saying that an alleged weapon was seized after a search." In addition, there was "conflicting testimony . . . as to the presence of a weapon." Defendant argued the grand jury "need[ed] to decide" the question regarding the existence of a weapon. However, the State "impinge[d] on the grand jury's independence . . . when . . . its language assume[d] that a robbery ha[d] occurred in that way." The judge reserved her decision.

On June 8, 2023, the trial court issued an oral opinion denying defendant's motion. The judge began by reviewing the applicable standards. She stated:

> It is well settled that an indictment is presumed valid and should not be dismissed unless it is . . . "manifestly deficient or palpably defective . . . ." [(Quoting State v. Hogan, 144 N.J. 216, 229 (1996); citing State v. La Fera, 35 N.J. 75 (1961); State v. Perry, 124 N.J. 128 (1991)).]
>
> . . . .

A-0819-23

. . . [A] [p]rosecutor without expressing his [or her] personal views on questions of fact may fairly explain the significance of evidence placed before the jury to aid its understanding of a complex or unfamiliar course of events. [(Citing State v. Childs, 242 N.J. Super. 121, 127 (App. Div. 1990)).]

It is, also, permissible for the [p]rosecutor to advise the grand jury as to the admissibility of evidence, the proper mode of procedure[,] and the law as it relates to the testimony. [(Citing State v. Hart, 139 N.J. Super. 565, 567-68 (App. Div. 1976); State v. Eckel, 429 N.J. Super. 580, 589 (Law Div. 2013)).]

A [p]rosecutor may not, however, . . . "participate in a grand jury's deliberation or express his [or her] views on questions of fact, or comment on the weight or sufficiency of the evidence, or in any way attempt to influence or direct the grand jurors in their findings. Rather the grand jury must act independently of any outside source." [(Quoting Hart, 139 N.J. Super. at 567-68).]

Furthermore, an indictment should not be dismissed, . . . "unless the [p]rosecutor's error was clearly capable of producing an unjust result." . . . [(Quoting State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)).]

The [p]rosecutor's misconduct must be, . . . "extreme and clearly infringed upon the grand jury's decision making function," . . . in order to justify dismissal of the indictment. [(Quoting State v. Murphy, 110 N.J. 20, 35 (1988)).]

7

Applying the standards to her review of the officer's testimony and the prosecutor's statements, the judge found:

> [T]he . . . cited comments [did not] cross[] the line between what is a proper explanation of how to consider the evidence into an improper expression of the defendant's guilt that would cause the jurors to lose sight of their responsibility. . . . [(Quoting Childs, 242 N.J. Super. at 129).]
>
> In the present case unlike the [p]rosecutor in [Eckel] at no time did the . . . [p]rosecutor . . . tell the . . . grand jurors that what [defendant] did under the law is absolutely a crime.
>
> Similarly unlike the [p]rosecutor in Har[t] the . . . [p]rosecutor in this matter did not express an opinion as to the ultimate decision of the grand jury.
>
> To the contrary while the . . . [p]rosecutor may have made certain charging recommendations for the grand jurors to consider, and in so doing commented on the evidence to explain why she was making those recommendations she, also, clearly articulated to the grand jury, . . . "[a]nd you guys always have the ability to bill it as is if that's what you think it should move forward as. But I'm recommending that you consider these amendments with these facts." . . .
>
> For all the foregoing reasons the defendant's motion to dismiss is denied.

On July 18, 2023, defendant pled guilty to "[c]ount [three] as amended to aggravated assault pointing a firearm, [in the] fourth[-]degree." Defendant "retain[ed] the right to appeal his motion to dismiss the indictment."

8

Defendant presents the following arguments for our consideration:

> PROSECUTORIAL MISCOND[UCT] TAINTED THE GRAND JURY PROCEEDINGS, REQUIRING REVERSAL.
>
> A. The indictment must be dismissed because the prosecutor expressed her personal view that [defendant] had possessed a weapon and used that weapon to commit an assault and robbery.
>
> B. The indictment must be dismissed because the prosecutor's definition of "deadly weapon" unfairly influenced the grand jury's decision-making process.

"We review a trial court's decision on a motion to dismiss an indictment for abuse of discretion." State v. Nieves, 476 N.J. Super. 609, 654 (App. Div. 2023) (citing State v. Bell, 241 N.J. 552, 561 (2020)). Given "that deferential standard, 'the trial court's decision should be reversed on appeal only [if] it clearly appears that the exercise of discretion was mistaken.'" Ibid. (alteration in original) (quoting Bell, 241 N.J. at 561) (internal quotation marks omitted).

"Once a grand jury returns an indictment, a court should dismiss that indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'" Bell, 241 N.J. at 560 (quoting State v. Twiggs, 223 N.J. 513, 531-32 (2018)).

9

A-0819-23

"Our Supreme Court has . . . expressed a willingness to dismiss an indictment if prosecutorial misconduct infringes on the grand jury's decision-making function." State v. Tucker, 473 N.J. Super. 329, 343-44 (App. Div. 2022) (citing Hogan, 144 N.J. at 229). The "standard, [requires] dismissal of an indictment . . . only if the prosecutor's conduct 'impinge[s] on a grand jury's independence and improperly influence[s] its determination.'" Id. at 344 (alterations in original) (quoting Bell, 241 N.J. at 561) (internal quotation marks omitted).

"[A] prosecutor . . . may not participate in its deliberations, or express his [or her] views on questions of fact, or comment on the weight or sufficiency of the evidence, or in any way attempt to influence or direct the grand jury in its findings." Hart, 139 N.J. Super. at 567-68.

Therefore, "an indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law," Tucker, 473 N.J. Super. at 344 (quoting State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010)); or when a "prosecutor told the grand jury its initial vote not to indict was wrong," ibid. (citing Hart, 139 N.J. Super. at 569). In Eckel, the trial court dismissed an indictment when it "determine[d] that an assistant county prosecutor's informal, gratuitous comments to a grand jury, subsequent to its

10

vote to indict, yet prior to its return of the indictment in open court, all regarding the quantum, quality, and significance of the evidence . . ., constitute[d], . . . a fundamentally unfair tactic." Eckel, 429 N.J. Super. at 582.

However, "without expressing his [or her] personal views on questions of fact, a prosecutor may fairly explain the significance of evidence placed before the grand jury to aid its understanding of a complex or unfamiliar course of events." Childs, 242 N.J. Super. at 129. In addition, "there is no impropriety in the prosecutor assisting in the investigation and examination of witnesses; in advising the grand jury as to the admissibility of evidence and the proper mode of procedure and in explaining the testimony with reference to the law of the case." Hart, 139 N.J. Super. at 567.

## A.

Defendant contends the prosecutor's "emphasi[s] that even if the State could not prove possession of an operable handgun, 'we know that whatever he had, whether it was an imitation or a BB gun . . ., he utilized in the actual commission by assaulting them with it,'" was impermissible. Defendant argues "these comments—asserting that the State knew that [defendant] had some kind of weapon and that he utilized it . . . assumed and suggested that disputed allegations were known facts." Therefore, relying on State v. Jeannotte-

Rodriguez, 469 N.J. Super. 69, 89 (App. Div. 2021), and Eckel, defendant contends the prosecutor's statements "expressed the prosecutor's view on what the evidence showed and on [defendant]'s guilt, and even implied that the State had more evidence than it presented that supported its view." Therefore, "[b]ecause such commentary infringe[d] upon the independent decision-making power of the grand jury, dismissal of the resulting indictment is required. The trial court's finding to the contrary was an abuse of discretion." We disagree.

Defendant's reliance on Jeannotte-Rodriguez is unavailing. In Jeannotte-Rodriguez, we noted a prosecutor may not "convey[] to the grand jury that the State had more evidence of criminality than it chose to present." 469 N.J. Super. at 100-01. Our careful review of the grand jury transcript fails to reveal the prosecutor made any such representation.

We conclude the judge did not misuse her discretion in denying dismissal of the indictment on these grounds. Viewing the presentation as a whole, we perceive no misconduct. We are satisfied the prosecutor "explain[ed] the significance of evidence," as permitted in Childs, 242 N.J. Super. at 127; and "explain[ed] the testimony with reference to the law of the case," Hart, 139 N.J. Super. at 567, and did not impinge on the grand jury's independence.

A-0819-23

B.

Defendant contends the prosecutor's stated definition of "deadly weapon" "unfairly influenced the grand jury's decision-making process." Defendant asserts, in addition to providing the statutory definition, the prosecutor's use of the words "pretty all-encompassing" and stating "it has more to do with the use . . . [it is] a circumstantial thing where looking at facts[,] is [the weapon] something that you feel like could be used to cause death or serious bodily injury. . . . pretty much we've seen a large array of items fall into that category," were improper. (all but fourth alteration in original).

Moreover, defendant argues "the trial court failed to address this commentary in its reasoning," and the court's holding "that the prosecutor did not express her opinion as to the grand jury's ultimate decision and emphasized that she told the jurors that they 'always have the ability to bill it as is'" was insufficient to "cure" the misconduct.

We conclude the judge did not misuse her discretion in denying dismissal of the indictment on these grounds. The prosecutor read the statutory definition to the grand jury. We agree the prosecutor's other comments did not infringe upon the grand jury's independence or create confusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13

A-0819-23